[Civ. No. 12472. First Dist., Div. Two. Oct. 26, 1943.]

Estate of HYMAN JACOBS, Deceased. THE PEOPLE, Appellant, v. JEAN L. JACOBS, as Executrix, etc., Respondent.

Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, and Lawrence Fletcher and Adrian A. Kragen, Deputies Attorney General, for Appellant.

Dean Cunha and Edward A. Cunha for Respondent.

DOOLING, J. pro tem.—This appeal presents the single question: In the event that a decedent's estate is insolvent, which is entitled to priority of payment, the expenses of the last illness and family allowance or a claim for retail sales taxes owing by the decedent to the State of California?

The trial court decided the question by giving priority to the payment of expenses of the last illness and family allowance, and settled an account showing the exhaustion of the estate by such payments leaving the claim of the State for sales taxes unsatisfied. From this order the State has prosecuted this appeal.

The question is purely one of statutory construction. Probate Code section 950 enacted in 1931 provides the order of

payments in the administration of decedents' estates in the following language:

"The debts of the decedent, the expenses of administration and the charges against the estate must be paid in the following order:

"(1)    Expenses of administration;

"(2)    Funeral Expenses;

"(3)    Expenses of last illness;

"(4)    Family allowance;

"(5)    Debts having preference by the laws of the United States;

"(6)    Wages to the extent of $200 of each employee of the decedent for work done or personal services rendered within 90 days prior to the death of the employer . . . ;

"(7)    Mortgages and other liens . . . ;

"(8)    Judgments . . . ;

"(9)    All other demands against the estate."

Section 952 Probate Code provides that: "No creditor of any one class shall receive any payment until all those of a preferred class are fully paid."

Section 26½ of the Retail Sales Tax Act as amended in 1939 (Stats. 1939, p. 2183; Deering's Gen. Laws, 1939 Supp., Act 8493) reads as follows:

"Whenever any retailer or other person liable for any tax levied hereunder is insolvent, whenever any retailer or other person makes a voluntary assignment of his assets, *whenever the estate of a deceased retailer or other person in the hands of executors, administrators or heirs is insufficient to pay all the debts due from the deceased,* or whenever the estate and effects of an absconding, concealed or absent retailer or other person are levied upon by process of law, *the tax together with interest and penalties attaching thereto, shall be first satisfied* provided, however, that this section shall not be construed to give the State a preference over any recorded lien which attached prior to the date when the tax became a lien." We have italicized the portion of this section particularly dealing with priority of payment of the retail sales tax in case of the insolvency of a decedent's estate.

Appellant admits that the priority thus provided in section 26½ of the Retail Sales Tax Act is a priority over debts of the decedent only, and gives no priority over other lawful charges against the estate. It therefore concedes that expenses of administration and funeral expenses, not being debts of the

decedent, take priority over the claim for retail sales tax. It further concedes that the family allowance is not a debt of the decedent, but it argues that since expenses of last illness do constitute a debt of the decedent and must be paid before the family allowance and since section 26½ Retail Sales Tax Act provides that the sales tax "shall be first satisfied" when the estate "is insufficient to pay all the debts due from the deceased," the sales tax is thus given a priority over the expenses of last illness and hence over family allowance.

Respondent argues with an equal show of logic that since the sales tax takes precedence of payment only over other debts of the decedent, other charges against the estate having precedence over the sales tax, and since the family allowance is not a debt of the decedent, therefore the family allowance must be paid before the sales tax; and since expenses of last illness must be paid before family allowance they must likewise have precedence of payment over sales tax.

In the solution of the dilemma thus posed by the arguments of respective counsel there are certain settled rules of statutory construction to which we may have recourse.

█ Statutes *in pari materia* should be construed together so as to harmonize them if possible, to ascertain the legislative intent and maintain the integrity of both. (*Raynor* v. *City of Arcata*, 11 Cal.2d 113, 120 [77 P.2d 1054]; *Rose* v. *Superior Court of Imperial Co.*, 80 Cal.App. 739, 751 [252 P. 765]; *Cohn* v. *Isensee*, 45 Cal.App. 531, 537 [188 P. 279]; *McGrath* v. *Kaelin*, 66 Cal.App. 41, 44 [225 P. 34].) █ In construing and harmonizing the several statutes they should be so construed as to avoid if possible a construction which would be unreasonable (23 Cal.Jur. 722) or absurd (23 Cal.Jur. 766) and to ascertain and effect the legislative intent (23 Cal.Jur. 725-727); and "intention may be ascertained, in doubtful cases, not only by considering the words used, but also by taking into account other matters, such as the context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, contemporaneous construction, and the like." (23 Cal.Jur. 735.)

█ It is pertinent to this consideration to remember that family allowances are strongly favored in the law. (11A Cal. Jur. 507.) Statutes providing for family allowances are of purely American origin and are grounded in a social

policy which recognizes the interdependence of the family and the state "recognizing the true relation of the State to the family as its organic, constituent element." (1 Woerner, The American Law of Administration, 3d ed., sec. 77, p. 234.) "Such statutes, like homestead and exemption laws, are enacted because of a benevolent and humane consideration of the helpless condition and distress of families occasioned by the death of those who had furnished their support and protection, and they must be construed with the same spirit of liberality that prompted their enactment. By the enactment of such laws the Legislature, under a wise public policy, seeks to guard and protect the family, which constitutes the foundation of the state itself, during the trying period of affliction and need caused by the death of the one who directed the family affairs." (*In re Pugsley's Estate*, 27 Utah 489 [76 P. 560, 561].)

Mindful of these considerations the Legislature has provided for the granting of a family allowance "which, in case of an insolvent estate, must not continue longer 'than one year after granting letters. Such allowance must be paid in preference to all other charges, except funeral charges, expenses of the last illness and expenses of administration. . . ." (Prob. Code, sec. 680.) The Legislature thus made it abundantly clear that at the time the Probate Code was adopted in 1931 it deemed the payment of a family allowance for the period of one year, even by an insolvent estate, of more importance than the payment of any debt of the decedent except only the expenses of the last illness.

This preference of the expenses of the last illness alone, among all decedent's debts, over the family allowance is itself grounded in a sound social policy. As important as is the maintenance of the security of the family after it has lost the protection of its head through death, it is even more important to the family that everything reasonably possible to preserve that head alive should be done through the care that the physician, the nurse and the hospital can give. The Legislature has, so far as it is possible by such legislation to do so, assured the ministration to the sick by making the charges for those services a highly preferred claim in the event of death.

In this connection another portion of the Probate Code must be referred to. By sections 640-646, Probate Code, provision is made for setting aside estates of decedents to the

surviving spouse or minor children without further adminis-
tration where the net value of the estate does not exceed
$2,500 upon proof that the expenses of the last illness, funeral
charges and expenses of administration have been paid. These
sections were last amended in 1939, the same year that section
26½ of the Retail Sales Tax Act was amended, and it is con-
ceded by the attorney general that "the Sections 640-646 pro-
viding for setting aside to the surviving spouse or minor chil-
dren of certain estates precludes the state from collecting from
such assets for delinquent sales taxes unless a lien for said taxes
shall have been perfected prior to the death of the decedent.
The sections specifically set forth the conditions under which
the estate shall be set aside and the sections are contemporane-
ous in their date of amendment with Section 26½ as
amended." (Opinion of the Attorney General NS 2802, July
29, 1940.)

██ To construe section 26½ as giving a priority over
expenses of last illness and family allowance in the case of
insolvent estates subject to ordinary administration, and at
the same time to construe it as excluded from payment in
estates summarily set aside under sections 640-646, Probate
Code, would obviously lead to an absurd and unreasonable
result. Assume for illustration one estate of a net value of
$2,500 and another of a net value of $2,600. In the first case
expenses of the last illness but not sales taxes must be paid
before setting aside the estate to the widow or minor children;
in the second case, accepting the position of the attorney gen-
eral, sales taxes owed by the decedent must first be paid be-
fore expenses of the last illness or family allowance. If the
sales tax exceeded $100 in the cases supposed the dependent
widow or children would get less for their support from
the $2,600 estate than from the $2,500 one. We cannot be-
lieve that the Legislature intended any such consequences.

██ It is to be noted also that section 26(b) of the Personal
Income Tax Act (Stats. 1941 p. 3080; Deering's Gen. Laws,
1941 Supp., Act 8494) provides as follows:

"(b) Every fiduciary who pays, in whole or in part any
claim, other than claims for taxes, expenses of administration,
funeral expenses, expenses of last illness, and family allow-
ance, against the person, estate or trust for whom or for
which he acts, or who makes any distribution of the assets
of such person, estate or trust, before he satisfies and pays
taxes, including all increases, interest and penalties, except

penalties due from a decedent, imposed by this act on the person, estate or trust for whom or for which he acts, or which constitute a claim against such person, estate or trust, or which are a lien or charge on or against the assets of such person, estate or trust, shall be personally liable therefor to the extent of such payments and distributions.''

This provision, adopted in 1941, expressly subordinates the income taxes of the decedent to expenses of the last illness and family allowance. ▮ Taxing statutes are *in pari materia* and should be construed together in ascertaining the legislative intent. (*Old Homestead Bakery, Inc.* v. *Marsh,* 75 Cal.App. 247, 259 [242 P. 749]; *Jameson Petroleum Co.* v. *State,* 11 Cal.App.2d 677, 680 [54 P.2d 776].)

The interest of the State may be supposed to be as great in one source of revenue as another. No conceivable reason can be suggested why the State should prefer the retail sales tax over expenses of last illness and family allowance, and subordinate the income tax to the same items.

▮ Finally we may point to subdivision 5 of section 950 Probate Code which makes ''debts having preference by the laws of the United States'' next in priority of payment after family allowance. The United States statutes generally give precedence of payment to taxes due from the decedent to the United States. It is settled that claims for taxes owed to the United States take precedence over taxes owed to the State. (*Harrison* v. *Deutch,* 294 Ill.App: 8 [13 N.E.2d 511]; *Bowes* v. *United States,* 127 N.J.Eq. 132 [11 A.2d 720].) To adopt the attorney general's construction of section 26½ of the Retail Sales Tax Act would create unnecessary confusion in the case of an insolvent estate where a federal tax and a retail sales tax were both involved, which might well give rise to a serious question of the constitutionality of section 26½. It should not be assumed that our Legislature intended to attempt to give a priority to a state tax over a federal tax which could not be allowed under the Constitution of the United States.

We are satisfied of the correctness of the construction placed on the pertinent statutory law by the probate court.

The order appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.