## UNITED STATES v. DIVISION OF LABOR LAW ENFORCEMENT, DEPARTMENT OF INDUSTRIAL RELATIONS, CALIFORNIA.

### No. 13150.

United States Court of Appeals
Ninth Circuit.

Feb. 11, 1953.

Ellis N. Slack, Act. Asst. Atty. Gen., A. F. Prescott, Louise Foster and Carolyn Just, Sp. Assts. to Atty. Gen., Walter S. Binns, U. S. Atty., E. H. Mitchell and Edward R. McHale, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

Pauline Nightingale, Edward M. Belasco and Leon H. Berger, Los Angeles, Cal., for appellee.

Before STEPHENS and ORR, Circuit Judges, and McCORMICK, District Judge.

ORR, Circuit Judge.

The trial court subordinated the priority granted to claims of the United States by Rev.Stat. § 3466, 31 U.S.C.A. § 191,[1] to certain labor claims which were asserted to have ripened into liens under the California Code of Civil Procedure, § 1204,[2] at

1. Revised Statutes, Sec. 3466. "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." 31 U.S.C.A. § 191.

2. Deering's Code of Civil Procedure of California (1941 ed., 1947 Pocket Supplement): "§ 1204. (Preferred labor claims in case of assignment for creditors: Payment: Pro rata distribution: Rights and duties of trustee, etc.: Effect of section.) When any assignment, whether voluntary or involuntary, and whether formal or informal, is made for the benefit of creditors of the assignor, * * * the wages and salaries of minors, mechanics, salesmen, servants, clerks, laborers, and other persons, for personal services rendered such assignor * * * within 90 days prior to such assignment * * * and not exceeding two hundred dollars ($200) each, con-

the time an assignment for the benefit of its creditors was made by an insolvent corporation. We have for determination the correctness of that finding.

The facts are not in dispute.

Stanley Restaurants, Inc., executed a written assignment to Ralph Meyer for the benefit of its creditors on June 23, 1947. Notice of this assignment was sent by Meyer to the trade creditors of the Stanley Restaurants, Inc., but no such notice was given to the parties to this action.

Appellee is the assignee of certain persons who were employed by the Stanley Restaurants, Inc., to perform labor and services. The wage claims · in question which were entitled to a preference and lien to the extent provided for by Cal. Code Civ.Proc. § 1204 amounted to the sum of $644.40. Appellee filed with Meyer written notices concerning the preferred labor claims.

On October 30, 1947, the United States Collector of Internal Revenue filed with Meyer as assignee for the benefit of creditors of Stanley Restaurants, Inc., a proof of claim for federal insurance contribution taxes, withholding taxes and cabaret taxes plus interest and penalties applicable thereto due and owing from the latter in the sum of $4,915.98. Of this amount the sum of $2,752.62 was secured by liens acquired by the federal government prior to the assignment for the benefit of creditors, and it is conceded that these liens are superior to the claims asserted by appellee. The claim of the Collector, including interest to June 15, 1950, now totals the sum of $5,627.33, of which $3,388.02 is secured by the prior liens and $2,239.31 not so secured. The entire sum of taxes, however, was due and owing from the Stanley Restaurants, Inc., at the time of the assignment for benefit of creditors.

Appellee's theory is that upon the assignment for benefit of creditors a specific and perfected lien arose in favor of the labor claims by operation of law under the provisions of Cal.Code Civ.Proc. § 1204, and that such a specific and perfected lien will prevail over the priority granted to the United States by Rev.Stat. § 3466.

Although the language of Rev.Stat. § 3466, which incorporates the priority first granted to the United States in 1797, has been described as broad and sweeping and, on its face, admits of no exception to the priority of claims of the United States, the Supreme Court has recognized that certain exceptions could be read into this statute. See United States v. Waddill, Holland & Flinn, Inc., 1945, 323 U.S. 353, 355, 65 S.Ct. 304, 89 L.Ed. 294. However, the question of whether the priority of the United States may be defeated by a specific and perfected lien created by a state statute has been expressly reserved numerous times by the Supreme Court.[3]

stitute preferred claims and liens as between creditors of the debtor, and must be paid by the trustee, assignee or receiver before the claim of any other creditor of the assignor, insolvent, or debtor whose property is so turned over, and must be paid as soon as the money with which to pay same becomes available. * * * The trustee, receiver or assignee for the benefit of creditors shall have the right to require sworn claims to be presented and shall have the right to refuse to pay any such preferred claim, either in whole or in part, if he has reasonable cause to believe that such claim is not valid but must pay any part thereof that is not disputed * * *.

"This section is binding upon all the courts of this State and in all receivership actions the court must order the receiver to pay promptly out of the first receipts and earnings of the receivership, after paying the current operating expenses, such preferred labor claims and such liens." Amended Stats. 1945, ch. 1192, § 1.

3. See Conard v. Atlantic Insurance Co., 1828, 1 Pet. 386, 441–442, 7 L.Ed. 189; Brent v. Bank of Washington, 1836, 10 Pet. 596, 611–612, 9 L.Ed. 547; Spokane County v. United States, 1929, 279 U.S. 80, 95, 49 S.Ct. 321, 73 L.Ed. 621; People of State of New York v. Maclay, 1933, 288 U.S. 290, 292, 294, 53 S.Ct. 323, 77 L.Ed. 754; United States v. Texas, 1941, 314 U.S. 480, 485–486, 62 S.Ct. 350, 86 L.Ed. 356; United States v. Waddill, Holland & Flinn, supra, 1945, 323 U.S. 355, 65 S.Ct. 304; Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 370–371, 67 S.Ct. 340, 91 L.Ed. 348.

The case of Bank of Wrangell v. Alaska Asiatic Lumber Mills, Inc., D.C.D.Alaska 1949, 84 F.Supp. 1, upon which appellee relies, clearly recognizes that the point of law is as yet undecided. The decision there was based solely on the special status traditionally given to mortgage liens. See 84 F.Supp. at page 5.

■ In cases considered by the Supreme Court where the issue of whether a lien may prevail over the priority granted by Rev.Stat. § 3466 was raised, that Court has found that the particular lien asserted was not so specific and perfected as to require determination of the question. See, for example, United States v. Texas, 1941, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356; United States v. Waddill, Holland & Flinn, Inc., supra; Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348. Certain criteria, however, have now been established. The lien must be definite in at least three respects as of the time the priority of the United States arises, namely: (1) the identity of the lienor; (2) the amount of the lien; and (3) the property to which it attaches. See Illinois ex rel. Gordon v. Campbell, supra, 329 U.S. at page 375, 67 S.Ct. 340. Only in such a situation would the question of priority be squarely presented.

Appellee argues that Cal.Code Civ.Proc. § 1204 creates a specific and perfected wage lien within the meaning of the above cases; that the lien is specific since it is upon all the insolvent's property passing to the assignee for benefit of creditors and is limited both in amount and to a particular class of persons; that the lien is perfected by operation of the statute itself at the time of the assignment for benefit of creditors and subsequent filing of written notice with the assignee is merely a demand for payment; that certain amendments made in 1945 to the California statute were for the purpose of insuring to applicable wage claims the full force of a lien; that the public policy favoring protection of wage-earner claims should result in a liberal interpretation of the state statute.

■ Judges Stephens and McCormick are of the opinion that at the moment of assignment for the benefit of creditors no specific and perfected lien arose under the state statute and that the assignment brought into conflict the federal and state laws as to priority of payment. In such a situation federal law prevails. They believe that to accept the claim of appellee that a lien in appellee's favor came into existence coincidentally with the Government's right to have its claim "first satisfied" would present a situation where a mere priority met a lien to which priority must yield. The decision in this case is, therefore, rested upon the ground that the appellee had no specific and perfected lien at the time the Government's priority arose.

To put the basis of Judges Stephens and McCormick's views into this opinion, I quote Judge Stephens as follows:

"We do not dispute the thesis that a prior specific and perfected lien rules over the Government's priority, but such result follows solely because a species of interest in a third party, the lien holder, is attached to the property. By the same token the lien rules over the priority when the lien and the priority come into being at the same point of time. For at the moment of effectiveness of the priority the property interest of the lienholder also is fixed. In other words, we think that the touchstone for decision as to which rule governs is not the existence of the lien prior to the event which brings both Government priority and laborer's lien into effect, but the interest in the property secured by the lien. In the circumstances, if the Government's debt is first paid by taking the property which is charged with the lien, it is paid by taking property from one person to satisfy the debt of another."

The writer of this opinion thinks that even if the contentions of appellee that its lien became specific and perfected be accepted, appellee could not prevail because it is apparent that the wage liens did not become specific and perfected *prior* to the assignment for the benefit of creditors. The same act, assignment for the benefit

of creditors, simultaneously brought into existence the priority of the United States under Rev.Stat. § 3466 and the wage lien under Cal.Code Civ.Proc. § 1204.

In United States v. Emory, 1941, 314 U.S. 423, 62 S.Ct. 317, 86 L.Ed. 315, the relative priorities of wage claimants under a Missouri statute and the United States under Rev.Stat. § 3466 were in question. The appointment of a receiver constituted the act which brought both statutes into effect. The Court stated: " * * the state statute could not prevail if it was in conflict with § 3466." 314 U.S. at pages 426–427, 62 S.Ct. at page 319. The Court there held that the claim of the United States should be first satisfied. "We are aware of no canon of statutory construction compelling us to hold that the word 'first' in a 150 year old statute means 'second' or 'third', unless Congress later has said so, or implied it unmistakably." 314 U.S. at page 430, 62 S.Ct. at page 321.

In Brent v. Bank of Washington, 1836, 10 Pet. 596, 9 L.Ed. 547, one of the earliest cases posing the problem of the relationship of a lien to the statute which is now Rev. Stat. § 3466, that Court said: " * * * it has never been decided that it (1 Stat. 515) affects any lien, general or specific, *existing when the event took place* which gave the United States a claim of priority." (Emphasis supplied.) 10 Pet. at pages 611–612.

In United States v. Waddill, Holland & Flinn, Inc., supra, the undecided question was stated to be " * * * whether the priority of the United States might be defeated by a specific and perfected lien upon the property *at the time of the insolvency or voluntary assignment.*" (Emphasis supplied.) 323 U.S. at page 355, 65 S.Ct. at page 306. See also People of State of New York v. Maclay, 1933, 288 U.S. 290, 292, 53 S.Ct. 323, 77 L.Ed. 754.

I think these cases suggest that only the lienor whose lien becomes specific and perfected *prior* to the event giving rise to the priority of the United States may assert the priority of his lien. No wage liens existed here at the time of the assignment for the benefit of creditors, that is, the time the priority of the United States arose. I refuse to ascribe to Congress the intent, in enacting the statute, that the very situation creating the federal priority could at the same instant defeat it. A state statute purporting to create a lien at the very instant the federal priority arises is incompatible with the federal statute establishing the priority. Where such conflict exists, the supremacy of the federal law must be recognized. U.S.Const. Art. VI, Cl. 2. Cf. Michigan v. United States, 1943, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312.

A very similar factual situation was presented in Leggett v. Southeastern People's College, 1951, 234 N.C. 595, 68 S.E.2d 263, where the North Carolina Supreme Court held that the priority of the United States prevails over a statutory wage lien which contemporaneously came into existence. Ernst v. Guarantee Millwork, Inc., 1939, 200 Wash. 195, 93 P.2d 404 apparently adopts a contrary position as regards certain labor liens which were said to mature automatically at the same time the federal priority also arose, i. e., upon insolvency. No reference is made, however, to the problem of supremacy of federal law. Further, the later case of Spokane Merchants' Association v. State, 1942, 15 Wash.2d 186; 130 P.2d 373, involving a state lien for taxes, contains the following statement seemingly inconsistent with the decision in the earlier Washington case: " * * * the right of the United States is superior under Rev.Stat., § 3466, unless the state taxes have become a specific lien *prior* to the insolvency of the debtor." (Emphasis supplied.) 15 Wash.2d at page 188; 130 P.2d at page 374.

Our holding in Cheek v. Division of Labor Law Enforcement, State of California, 9 Cir., 1948, 166 F.2d 429, certiorari denied, 335 U.S. 820, 69 S.Ct. 42, 93 L.Ed. 374, is not inconsistent with my views. It was there held that a prior lien created under Cal.Code Civ.Proc. § 1204 by an assignment for the benefit of creditors survived the subsequent filing of an involuntary petition in bankruptcy. The Cheek case did not

present the question of the simultaneous creation of a lien under a state statute and the priority of the United States under Rev.Stat. § 3466.

The judgment of the District Court is reversed.